IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHARLESETTA T. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:14-cv-00104-AKK-PWG |
| | ) |
| TROY UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Charlesetta T. Jones was an employee of Defendant Troy University and alleges that she was subjected to discrimination, retaliation, and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, unlawful termination in violation of the Fifth Amendment, and a state law claim of tortious interference with employment. This matter is before the court on Troy University's motion for summary judgment. (Doc. 44). The motion is fully briefed and taken under submission on the record and without oral argument.

**I.    JURISDICTION**

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 as to Jones's federal causes of action, and the court may exercise supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367. The parties do not contest

personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391. On November 20, 2014, this matter was referred to the undersigned "for consideration and disposition or recommendation on all pretrial matters as may be appropriate." (Doc. 38); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56 requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for

trial. *Celotex*, 477 U.S. at 324. "Where 'the adverse party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse party.' Fed. R. Civ. P. 56(e) (emphasis added). Thus, summary judgment, even when unopposed, can only be entered when 'appropriate.'" *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). When opposing a motion for summary judgment, however, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. "If the evidence [presented by the nonmoving party to rebut the moving party's evidence] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (internal citations omitted).

### III. BACKGROUND AND STATEMENT OF MATERIAL FACTS

Jones is an African-American who began her employment in the Student Services Department of Troy University in 2002. (Doc. 22 at ¶¶ 4,6). On February 24, 2012, Troy University issued an Employee Disciplinary Notice to Jones for "Unprofessional/inappropriate behavior," specifically: "A harassment complaint was filed against [Jones] following an incident occurring in December 2010. The complaint was investigated and presented to the Personnel Committee. While the committee found that her actions did not rise to the level of harassment, there was unprofessional/inappropriate behavior." (Doc. 44-11 at p.2). The notice further advised that "[n]o further unprofessional/inappropriate behavior will be tolerated" and that "[f]ailure to comply with this notice, will result in immediate termination as an employee with the University." *Id.* Jones acknowledged receipt of the notice and its findings on February 27, 2012. (Doc. 44-11 at p.3).

On October 31, 2012, Herbert Reeves, Dean of Student Services/Judicial Affairs for Troy University, sent a memorandum to Troy University Human Resources employee Kara Hall stating "I would recommend that we seek approval through Dr. John Dew, Senior Vice Chancellor for Student Services and Administration to proceed with [Jones's] termination as an employee of Troy University." (Doc. 44-6 at p.2). A memorandum dated November 16, 2012, from Dew to Troy University Chancellor Jack Hawkins, Jr., stated that a committee "met

4

to review the facts of the harassment charge against Charlesetta Townsend-Jones." (Doc. 44-7 at p.2). The memorandum specifically stated:

> The committee unanimously agrees that the evidence indicates that [Jones's] behavior is harassing, intimidating, unprofessional and inappropriate. ... Given the prior written disciplinary action for the same behavior date 2/24/2012 states "failure to comply with this notice, will result in immediate termination as an employee with the University," the committee agrees that further disciplinary action is warranted and is supportive of the termination. This will conclude the investigation process and in accordance with policy, we will notify both parties of our findings.
>
> Should you concur with our recommendation, please indicate with your signature below.

(Doc. 44-7 at p.2). Hawkins's signature appears above his name on that memorandum in the space provided. *Id.*

On November 16, 2012, Jones was notified verbally and by hand-delivered letter from Reeves "to give Notice of Termination from Troy University." (Doc. 44-2 at p.2). The letter informed Jones that pursuant to Section 8.2.3 of the Staff Handbook, she had two days to request an appeal of her termination. *Id.* Section 8.2.3 of the Staff Handbook provides, in pertinent part:

> A regular, full-time employee may appeal a Notice of Termination. The employee has two working days from the date of receipt of the notice of termination to request an appeal. Delivery Receipt of Notice for certified mail is reasonable proof that delivery has been accomplished. The request should be submitted in writing, to the Chair of the Personnel Advisory Committee either by email or written

>notice. If the employee requests an appeal, the Chair of the Personnel Advisory Committee will schedule and appeals hearing within a reasonable time frame based on the need to coordinate schedules and obtain pertinent information. If an appeal is requested, the appellant will be eligible for health benefits through COBRA. If reinstated, sick leave and annual leave do not accrue during the elapsed time for the appeals process.

(Doc. 44-5 at p.2). Jones requested an appeals hearing, which was held on February 28, 2013. (Doc. 44-12 at p.3). On March 1, 2013, the Appeals Committee voted to uphold the termination of Jones's employment. (Doc. 44-12 at p.2). The Appeals Committee's recommendation to uphold the termination was adopted by Hawkins on March 13, 2013. (Doc. 44-10 at p.2).

On June 7, 2013,[2] Jones filed her Charge of Discrimination in the Equal Employment Opportunity Commission ("EEOC"). (Doc. 22-1 at p.1). The EEOC issued a Dismissal and Notice of Rights to Jones on November 22, 2013. (Doc. 1-1 at p.1). Jones filed her Complaint in this court on February 2, 2014, and filed an Amended Complaint on April 7, 2014, in which she asserted claims against Troy University for: (1) subjecting her to a hostile work environment in violation of Title

---

[2]Jones's signature on a "Declaration of Charging Party" and an EEOC Intake Questionnaire bear the date of April 20, 2013. (Doc. 22-1 at pp.5, 7). On the Charge of Discrimination, her signature bears the date of May 30, 2013. (Doc. 22-1 at p.1). The Charge of Discrimination is date-stamped as received by EEOC on June 7, 2013, and the Intake Questionnaire is date-stamped as received by EEOC on May 8, 2013). (Doc. 22-1 at pp.1-2).

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981, through the remedial vehicle of 42 U.S.C. § 1983 (Count I); (2) race discrimination under Title VII and § 1981 (Count II-A);[3] (3) retaliation under Title VII and § 1981 (Count II-B); (4) unlawful termination in violation of Plaintiff's right to due process secured by the Fifth Amendment to the United States Constitution, brought through § 1983 (Count III); and, (5) a state law claim for tortious interference (Count IV). (Doc. 22).

## IV. DISCUSSION

### A. Failure to Exhaust Administrative Remedies

Troy University first argues that Jones failed to file her Charge of Discrimination with the EEOC within the statutorily provided time of 180 days of her alleged Title VII claims, and that as a result, those claims are barred from consideration. (Doc. 44 at p.4). "It is settled law that in order to obtain judicial consideration of [a Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred. § 2000e-(5)(e)(1)." *Pijnenburg v. W. Georgia Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir. 2001)(affirming district court's dismissal of plaintiff's Title VII

---

[3] Plaintiff's Amended Complaint contains two separate counts entitled "Count II." To avoid confusion, the first "Count II" is referred to as "Count II-A" and the subsequent "Count II" is referred to as "Count II-B."

claims for failure to timely file an administrative charge with the EEOC within 180 days of the alleged unlawful employment practice). Jones concedes that

> the filing period "begins to run from a final decision to terminate the employee." *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1201 (11th Cir. 2003) (quotation omitted). Accordingly, the limitations period commences on the date the employee receives unequivocal notice of termination. *Id*. (citation omitted). An employee's pursuit of an internal appeal, "or some other method of collateral review of an employment decision, does not toll the running of the limitations period." *Id*. 768.

(Doc. 45-1 at pp.9-10).[4] Jones filed her Charge of Discrimination with the EEOC on June 7, 2013. (Doc. 22-1 at p.1). Accordingly, the latest date on which Jones could have timely received unequivocal notice of an adverse employment action was December 9, 2012. Nevertheless, Jones advances a number of arguments in response to Troy University's motion that she did not receive notice of her termination until March 13, 2013, rather than November 16, 2012. For the following reasons, those arguments are unsupported by the evidence in the record and relevant law.

Jones's Amended Complaint stated that she "received a Notice of Termination

---

[4]Jones has asserted other claims of unlawful employment practices which occurred before the termination of her employment. However, because Jones does not allege an unlawful employment practice beyond the date of the termination of her employment, discussion is limited to determining the date on which Jones received unequivocal notice of the termination of her employment. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1100 n. 19 (11th Cir. 1996)("[T]he time for filing an EEOC charge begins to run when the employee receives unequivocal notice of the adverse employment decision.").

dated November 16, 2012 from [Troy University] wherein it was stated in the first paragraph that she had two days to appeal before an appeals committee." (Doc. 22 at ¶ 22). The Amended Complaint further stated that Jones received a letter "dated March 13, 2013 and which she received on March 16, 2013 informing her that the termination was upheld." (Doc. 22 at ¶ 23). Jones testified in her deposition:

> Q. All right. You acknowledge you were terminated from Troy University, correct?
>
> A. Yes, sir.
>
> Q. All right. When were you terminated?
>
> A. November 16, 2012.
>
> Q. How were you terminated?
>
> A. Via letter and a meeting with Dean Reeves.

(Doc. 44-4 at p.4).

Her own statements notwithstanding, Jones argues that the notice of termination was not effective because Reeves, who signed and hand-delivered the Notice of Termination to her, "did not have the authority to terminate the employment of any of [Troy University's] employees." (Doc. 45-1 at p.11). The Troy University Staff Handbook provides that "[a]ll recommendations regarding dismissal or termination are made at the Senior Vice Chancellor level or above." (Doc. 44-5 at

p.2). Jones appears to argue that Troy University violated its internal procedures because the initial recommendation to terminate her employment originated with Reeves, who is not a Senior Vice Chancellor or above. (Doc. 45-1 at p.11; Doc. 36 at p.2; 44-6 at p.2). Although the Staff Handbook Section 8.2.1 provides that recommendations to terminate employees are "made" at the Senior Vice Chancellor level or above, the same section also states that "[d]ismissals/terminations will be discussed with Human Resources, the immediate supervisor, and the effected employee." (Doc. 44-5 at p.2). In this case, Reeves, was an immediate supervisor to Jones and was specifically contemplated as a party to termination discussions by the Staff Handbook. Further, the record is clear that Senior Vice Chancellor John Dew headed a committee of personnel from Human Resources which made the recommendation to terminate Jones's employment, and that Chancellor Hawkins approved that recommendation. (Doc. 44-7 at p.2). Moreover, to the extent that Jones argues that Reeves did not have the authority to sign the Notice of Termination or deliver it to her, the Staff Handbook provides:

> **608.2.2 Procedures for Issuing Notice of Termination**
>
> Before a non-probationary, regular full-time employee may be terminated for cause, the immediate supervisor must coordinate with Human Resources. The letter of Notice of Termination is a written notice that cites the reasons for the termination. Prior to the supervisor presenting the Notice of Termination to the employee, Human

> Resources will review and the appropriate Senor Vice Chancellor must approve the termination. The supervisor must present the notice of termination in person, if at all possible..."

(Doc. 44-5 at p.2). Accordingly, the record is clear that Senior Vice Chancellor Dew made the recommendation to terminate Jones's employment, Chancellor Hawkins approved that recommendation, and Reeves, in coordination with Human Resources, hand-delivered the Notice of Termination to Jones, all in compliance with the pertinent sections of the Staff Handbook. Jones, having received and understood that Notice of Termination, exercised her right to appeal her termination, which was conducted and ultimately upheld. It is logically inconsistent that Jones could have appealed a termination of which she did not have unequivocal notice. Even when construing the evidence in the light most favorable to Jones as the non-moving party, it is clear that on November 16, 2012, Jones received notice verbally and in writing that her employment with Troy University was terminated.

     Moreover, Jones cites no authority for her apparent proposition that the 180-day filing requirement of a Charge of Discrimination with EEOC is tolled when an employee receives of an unequivocal notice of termination from an employer which was predicated on a violation of that employer's internal procedures. The first page of the Troy University Staff Handbook states that "[t]he policies, practices, and benefits discussed in this handbook are general operating guidelines, which do not

represent a contract of employment and remain subject to change at any time by Troy University." (Doc. 45-2 at p.2). *See McMullen v. Tuskegee Univ.*, No. 3:15CV16-WHA, 2016 WL 1601040, at *8 (M.D. Ala. Apr. 21, 2016)("The handbook at issue in the instant case clearly states that it does not create an employment contract."); *Carr v. Stillwaters Dev. Co., L.P.*, 83 F.Supp. 2d 1269, 1279 (M.D. Ala. 1999)("[Plaintiff] was an at-will employee; the handbook's policies were merely precatory and did not constitute an enforceable agreement."); and *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 734 (Ala. 1987)(noting that "this Court has refused to hold the provisions of a handbook enforceable against an employer where the handbook at issue expressly stated the ... 'Handbook and the policies contained herein do not in any way constitute, and should not be construed as a contract of employment between the employer and the employee, or a promise of employment.' *McCluskey v. Unicare Health Facility, Inc.*, 484 So.2d 398, 400 (Ala.1986)."). Accordingly, under Alabama law, the policies provided in the Staff Handbook would not have provided a legally binding contract to Jones, nor does the record indicate that the polices in the handbook were violated, nor does the handbook serve as a basis for obviating the unequivocal notice she received on November 16, 2012, that her employment with Troy University was terminated.

Because Jones received unequivocal notice of termination of her employment

on November 16, 2012, any Charge of Discrimination arising from that termination was due to be filed with the EEOC not later than May 15, 2013. Jones did not endorse her Charge of Discrimination until May 30, 2013, and it was not filed with the EEOC until June 7, 2013. (Doc. 22-1 at p.1). Accordingly, Troy University's motion for summary judgment as to Jones's claims pursuant to Title VII is due to be granted.

Jones's also brought her claims of hostile work environment, discrimination, and retaliation pursuant to §1981 and §1983. A § 1981 claim against a state actor must be brought under § 1983. *Butts v. County of Volusia*, 222 F.3d 891, 892–894 (11th Cir. 2000). Therefore, Jones has no cause of action under § 1981. Further, Troy University is the only defendant in this action.

> Where a party attempts to sue a state in federal court, the Eleventh Amendment prohibits the federal court from exercising jurisdiction over the suit, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100, 104 S.Ct. 900, 906–08, 79 L.Ed.2d 67 (1984); *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). However, neither one of these exceptions applies to the Plaintiff's § 1983 claims against [Troy University]. Congress has not abrogated Eleventh Amendment immunity in § 1983 cases. *Quern*, 440 U.S. at 345, 99 S.Ct. at 1147. The State of Alabama also has not waived its immunity. *Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir.1989). Consequently, the Defendants are entitled to summary judgment on the § 1983 claims against [Troy University].

*Boyett v. Troy State Univ. at Montgomery*, 971 F. Supp. 1403, 1410–11 (M.D. Ala. 1997), aff'd sub nom. *Boyett v. Troy State Univ.*, 142 F.3d 1284 (11th Cir. 1998). Accordingly, summary judgment is due in Troy University's favor as to Jones's claims pursuant to §1981 and §1983.

As to Count III, Jones's claim of wrongful termination in violation of the Fifth Amendment, Troy University argues that Count III is actually a claim under §1983, and that Troy University is therefore immune from such suit under Eleventh Amendment immunity. (Doc. 44 at p.6). Jones appears to concede that she is barred from recovery of monetary relief against Troy University, arguing instead that she is also seeking injunctive relief from which Troy University would not be immune. (Doc. 45-1 at pp.49-50). However, Jones has misunderstood the exception for equitable relief. The Supreme Court has stated:

> It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. See, e.g., *Florida Department of Health v. Florida Nursing Home Assn.*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (per curiam); *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam ). This jurisdictional bar applies regardless of the nature of the relief sought. See, e.g., *Missouri v. Fiske*, 290 U.S. 18, 27, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933) ("Expressly applying to suits in equity as well as at law, the Amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a State").

> ...
>
> The Court has recognized an important exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against the State. This was the holding in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.2d 714 (1908), in which a federal court enjoined the Attorney General of the State of Minnesota from bringing suit to enforce a state statute that allegedly violated the Fourteenth Amendment. This Court held that the Eleventh Amendment did not prohibit issuance of this injunction. The theory of the case was that an unconstitutional enactment is "void" and therefore does not "impart to [the officer] any immunity from responsibility to the supreme authority of the United States." *Id*., at 160, 28 S.Ct., at 454. Since the State could not authorize the action, the officer was "stripped of his official or representative character and [was] subjected to the consequences of his official conduct." *Ibid*.
>
> While the rule permitting suits alleging conduct contrary to "the supreme authority of the United States" has survived, the theory of *Young* has not been provided an expansive interpretation. Thus, in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court emphasized that the Eleventh Amendment bars some forms of injunctive relief against state officials for violation of federal law. *Id*., at 666–667, 94 S.Ct., at 1357–1358. In particular, *Edelman* held that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief. Under the theory of *Young*, such a suit would not be one against the State since the federal-law allegation would strip the state officer of his official authority. Nevertheless, retroactive relief was barred by the Eleventh Amendment.

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984). Troy University is the only Defendant in this case, and Jones has not named as a defendant any state official against whom an injunction

15

could be entered. Accordingly, Troy University as a branch of the state is immune under the Eleventh Amendment from Jones's claims in Count III of the Amended Complaint, and Troy University's motion for summary judgment is due to be granted on this issue.

The sole remaining claim in the Amended Complaint is Jones's state law claim of tortious interference with employment. (Doc. 22 at p.12). Troy University argues that "as an agency of the State of Alabama, [it] is absolutely immune from suit under Article I, § 14 of the Alabama Constitution for alleged violations of state law." (Doc. 44 at p.39). Jones argues in response that "[a] state official is not immune from a suit to compel the performance of a legal duty or a suit brought under the Declaratory Judgment Act. *Jones v. Kennedy*, 890 So.2d 975 (Ala. 2004)." (Doc. 45-1 at p.51). However, this argument fails specifically because Jones has not named as a defendant any state official and this suit was not brought under the Declaratory Judgment Act. Accordingly, Troy University's motion for summary judgment is due to be granted as to this issue.

## V.    CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant Troy University's motion for summary judgment (Doc. 44) is due to be granted in Troy University's favor.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **September 6, 2016.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 22nd day of August, 2016.

                                              /s/ Paul W. Greene
                                           United States Magistrate Judge